EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Edward Casillas Carrasquillo<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Peticionario | Certiorari<br><br>2022 TSPR 48<br><br>209 DPR ____ |

Número del Caso: CC-2020-465

Fecha: 19 de abril de 2022

Tribunal de Apelaciones:

    Panel V

Oficina del Procurador General:

    Lcdo. Isaías Sánchez Báez
    Procurador General

    Lcdo. Fernando Figueroa Santiago
    Procurador General

    Lcdo. Omar Andino Figueroa
    Subprocurador General

    Lcda. María Astrid Hernández Martín
    Procuradora General Auxiliar

Abogado de la parte recurrida:

    Lcdo. Fernando Santiago Ortiz

Materia: Responsabilidad Civil Extracontractual – El Gobierno de Puerto Rico no responde en daños y perjuicios ante un querellado de hostigamiento sexual por las medidas protectoras adoptadas en el área del trabajo a consecuencia de tal querella.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Edward Casillas Carrasquillo | | |
| Recurrido | | |
| v. | CC-2020-0465 | |
| Estado Libre Asociado de Puerto Rico | | |
| Peticionario | | |

Opinión del Tribunal emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 19 de abril de 2022.

El hostigamiento sexual laboral es un mal que requiere la pronta intervención y acción del patrono para mitigar la magnitud de sus consecuencias. El Gobierno de Puerto Rico como patrono no está exento de tal obligación y responsabilidad. Especialmente, como en el caso que nos ocupa, cuando la adopción de medidas protectoras preventivas tiene que implantarse oportunamente. La fuerte política en contra del hostigamiento así se lo exige.

Con ese preámbulo, hoy nos corresponde precisar si el Gobierno de Puerto Rico responde en daños y perjuicios ante un querellado de hostigamiento sexual por las medidas protectoras adoptadas en el área del trabajo a consecuencia de tal querella.

En consideración a la política pública en contra del hostigamiento sexual y las responsabilidades impuestas a los

patronos por las leyes y reglamentos aplicables, resolvemos que el Gobierno de Puerto Rico no responde cuando actúa bajo tales parámetros. A continuación, un recuento de las circunstancias fácticas que nos condujeron a tal conclusión.

I

A raíz de una querella de hostigamiento sexual presentada en su contra, el Agte. Edward Casillas Carrasquillo (agente Casillas Carrasquillo) instó una acción de daños y perjuicios en contra del Gobierno de Puerto Rico, el Negociado de la Policía de Puerto Rico y varios de sus funcionarios tanto en su carácter personal como oficial. En síntesis, alegó que, mientras laboraba como Teniente II adscrito al Distrito de Caguas, fue trasladado al Distrito de Juncos, sin haberlo solicitado y sin justa causa.[1] Indicó, además, que fue informado del inicio de unas investigaciones administrativas y criminales a consecuencia de la querella instada por la Agte. Carolyn Santiago Ruiz, quien también fue incluida como codemandada.[2] Particularizó que la querella tenía "imputaciones maliciosas, infundadas, libelosas y difamatorias"[3] en su contra y que no existía ni un ápice de prueba de los hechos imputados. Añadió que tales imputaciones se generaron con la intención de perjudicar y

---

[1] Al momento de la presentación de la demanda, laboraba como Comandante Interino adscrito al Distrito de Juncos.

[2] El traslado se efectuó el mismo día en que se presentó la querella de hostigamiento sexual, a saber, el 19 de marzo de 2018.

[3] Demanda, pág. 3.

mancillar su buen nombre. A ello agregó que tuvo que defenderse injustificadamente en el proceso de las investigaciones y que se han visto impactados todos los aspectos de su vida.

En respuesta, el Estado solicitó la desestimación de la acción en su contra al amparo de la Regla 10.2 de Procedimiento Civil de 2009, infra. Argumentó que, tomando como ciertas las alegaciones de la demanda, el agente Casillas Carrasquillo no tenía una causa de acción en su contra. Así, explicó que la Ley de pleitos contra el Estado, infra, no autoriza reclamaciones cuando la causa de acción se origina por calumnia, libelo o difamación.

Por su parte, el agente Casillas Carrasquillo se opuso a la desestimación. Expuso que la Policía de Puerto Rico, como patrono de las partes aquí involucradas, respondía por los actos de sus funcionarios. Además, que obraron a sabiendas de la falsedad de las imputaciones de índole sexual.[4]

Luego de celebrar una vista argumentativa y estudiar ambas posturas, el Tribunal de Primera Instancia optó por denegar la solicitud de desestimación en esta etapa de los procedimientos. Al evaluar las alegaciones de la demanda, concluyó que existían alegaciones que justificaban una reclamación en contra del Estado. A tales efectos, resaltó

_____

[4]A su vez, el Estado presentó Réplica a la oposición de desestimación y el agente Casillas Carrasquillo presentó Dúplica en oposición a solicitud de desestimación.

que los hechos que originaron la demanda se suscitaron en un ambiente laboral donde el Estado es el patrono y que, precisamente, se incluyen como reclamo los alegados daños consecuencia del proceso investigativo y disciplinario que se efectuó en contra del agente Casillas Carrasquillo. Por consiguiente, determinó que procedía iniciar con el descubrimiento de prueba.

Oportunamente, el Gobierno de Puerto Rico presentó una moción de reconsideración. En esta ocasión, fue más enfático en explicar que las reclamaciones o causas de acción del agente Casillas Carrasquillo se podían dividir en dos (2) ámbitos: (i) la presentación de la querella, y (ii) las consecuencias administrativas de tal presentación, como el inicio de las investigaciones y el traslado. En cuanto al primer punto, destacó que se trata de un acto intencional por parte de la agente querellante y que el Estado no responde por tratarse de una causa de acción descrita por el demandante como difamación y calumnia. Con respecto al segundo, destacó que, como patrono, respondió acorde con su deber ante una querella de hostigamiento sexual. Es decir, que actuó según lo exigen los reglamentos aplicables.

Por su parte, el agente Casillas Carrasquillo presentó Moción en oposición a solicitud de reconsideración. Planteó que existía controversia sobre la justificación de su traslado y sujeción al proceso investigativo. Así, defendió la suficiencia de las alegaciones en su demanda. Cónsono con ello, resaltó la premisa básica de que los casos se deben

atender en los méritos y reafirmó la responsabilidad del Estado ante las actuaciones de sus empleados.

Tras evaluar los argumentos, el Tribunal de Primera Instancia se mantuvo en su decisión original y denegó la solicitud de reconsideración del Estado.

En desacuerdo con tal determinación, el 14 de julio de 2020, el Gobierno de Puerto Rico, representado por la Oficina del Procurador General, presentó un recurso de certiorari ante el Tribunal de Apelaciones. Insistió en que procedía la desestimación de las reclamaciones en su contra. Recalcó que la Ley de pleitos contra el Estado, infra, rechaza las reclamaciones intencionales como lo sería la difamación y la calumnia. A su vez, señaló que la atención de la querella por hostigamiento sexual, el inicio de la investigación y el traslado como medida cautelar fueron parte de sus deberes como patrono.

A través de una resolución notificada el 20 de agosto de 2020, el Tribunal de Apelaciones denegó expedir el recurso. Basado en los criterios de la Regla 40 de su Reglamento, 4 LPRA Ap. XXII-B, entendió prudente abstenerse de intervenir en esta etapa de los procedimientos. Con ello, señaló que la participación del Estado y sus funcionarios sería objeto de escrutinio en el juicio y que en ese momento las partes pondrían al tribunal en posición de resolver la controversia.

Tras denegarse también su solicitud de reconsideración, el 23 de octubre de 2020, la Oficina del Procurador General

presentó el recurso de <u>certiorari</u> de autos. Posteriormente, el 29 de enero de 2021, se expidió el recurso.

Con el beneficio de la postura de ambas partes, procedemos a resolver.

**II**

**A.**

La Regla 10.2 de Procedimiento Civil de 2009, 32 LPRA Ap. V, permite a un demandado solicitar al tribunal que desestime la demanda antes de contestarla "cuando es evidente de las alegaciones de la demanda que alguna de las defensas afirmativas prosperará". <u>Conde Cruz v. Resto Rodríguez et al.</u>, 205 DPR 1043, 1065 (2020); <u>Sánchez v. Aut. de los Puertos</u>, 153 DPR 559, 569 (2001). Entre las defensas para solicitar la desestimación se encuentra que la demanda no expone "una reclamación que justifique la concesión de un remedio". 32 LPRA Ap. V, R. 10.2(5).

Al resolverse una moción de desestimación por este fundamento, el tribunal debe tomar como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente. <u>Torres, Torres v. Torres et al.</u>, 179 DPR 481, 501 (2010); <u>Aut. Tierras v. Moreno & Ruiz Dev. Corp.</u>, 174 DPR 409, 428 (2008). A su vez, debe interpretar las alegaciones en forma conjunta, liberal y de la manera más favorable a la parte demandante. Íd.

La demanda no deberá desestimarse a menos que se demuestre que el demandante no tiene derecho a remedio alguno. <u>Aut. Tierras v. Moreno & Ruiz Dev. Corp.</u>, supra,

pág. 429. Entiéndase, los tribunales deben evaluar "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de este, la demanda es suficiente para constituir una reclamación válida". Íd.; Colón v. Lotería, 167 DPR 625, 649 (2006).

**B.**

De otra parte, la doctrina de inmunidad soberana impide que el Estado pueda ser demandado si no presta su consentimiento. ELA v. El Ojo de Agua Development, 205 DPR 502, 515 (2020); Guardiola Álvarez v. Depto. de la Familia, 175 DPR 668, 678 (2009). A partir de la incorporación de la referida doctrina por vía jurisprudencial, la Asamblea Legislativa ejerció su facultad de adoptar legislación dirigida a establecer las instancias en las cuales podrán presentarse reclamaciones judiciales contra el Estado, así como la extensión del remedio disponible. ELA v. El Ojo de Agua Development, supra, págs. 515-516; Guardiola Álvarez v. Depto. de la Familia, supra, pág. 679; Berríos Román v. E.L.A., 171 DPR 549, 555-556 (2007).

A tales efectos, se aprobó la Ley Núm. 104 del 29 de junio de 1955, conocida comúnmente como la Ley de pleitos contra el Estado, 32 LPRA sec. 3077 et seq. (Ley Núm. 104). A través de esta, el Estado consintió a ser demandado en daños y perjuicios por actuaciones y omisiones culposas o negligentes de sus funcionarios, empleados o agentes, en el desempeño de sus funciones. Berríos Román v. E.L.A., supra, pág. 556. Su intención es que el Estado responda por los

actos y las omisiones de los funcionarios y agentes especiales "en las mismas circunstancias y condiciones en que sería responsable un ciudadano particular", siempre y cuando se cumpla con las condiciones que impone la ley. Zambrana Maldonado v. E.L.A., 129 DPR 740, 754 (1992).

Aunque el citado estatuto implanta la renuncia a la inmunidad, hemos calificado tal renuncia como una condicionada. ELA v. El Ojo de Agua Development, supra, pág. 516; Guardiola Álvarez v. Depto. de la Familia, supra. Ello, por imponerse varias restricciones y limitaciones a tales reclamaciones.

Como parte de las limitaciones, la Ley Núm. 104, supra, excluyó de su ámbito de aplicación las actuaciones intencionales o constitutivas de delito realizadas por funcionarios del Estado y las actuaciones discrecionales de estos en el desempeño de sus deberes. Berríos Román v. E.L.A., supra. A su vez, entre otras consideraciones, expresamente no autoriza las acciones por daños y perjuicios contra el Estado en las circunstancias siguientes:

> (a) En el cumplimiento de una ley o reglamento, aun cuando éstos resultaren ser nulos. […]
> (d) Constitutivo de acometimiento, agresión u otro delito contra la persona, encarcelación ilegal, arresto ilegal, persecución maliciosa, **calumnia**, **libelo**, **difamación** y falsa representación e impostura. (Negrillas suplidas). 32 LPRA sec. 3081.

**c.**

Es un principio rector de la Constitución de Puerto Rico que la dignidad del ser humano es inviolable. Art. II, Sec. 1, Const. PR, LPRA, Tomo 1. Al amparo de este principio básico, se prohíbe expresamente el discrimen por razón de raza, color, sexo, nacimiento, origen, condición social e ideas políticas o religiosas. Const. PR, supra. Además, como corolario de lo anterior, la Constitución de Puerto Rico protege a toda persona contra ataques abusivos a su honra, reputación y vida privada o familiar. Art. II, Sec. 8, Const. PR, supra. Véase, Rosa Maisonet v. ASEM, 192 DPR 368, 379 (2015); Albino v. Ángel Martínez, Inc., 171 DPR 457, 470 (2007).

A raíz de lo anterior, se ha convertido en política pública erradicar el hostigamiento sexual por constituir una forma de discrimen por razón de sexo que atenta contra la dignidad del ser humano. Íd.

Particularmente, la Ley para prohibir el hostigamiento sexual en el empleo, Ley Núm. 17 del 22 de abril de 1988, 29 LPRA sec. 155 et seq., adopta e implanta tal política al prohibir expresamente este tipo de conducta e imponer responsabilidades a los patronos. Dentro de la definición de patrono, se incluye "toda persona natural o jurídica de cualquier índole, **el Gobierno del Estado Libre Asociado de Puerto Rico**, incluyendo cada una de sus tres Ramas y sus instrumentalidades o corporaciones públicas, los gobiernos municipales y cualquiera de sus instrumentalidades o

corporaciones municipales, que con ánimo de lucro o sin él, emplee personas mediante cualquier clase de compensación y sus agentes y supervisores". (Negrillas suplidas). 29 LPRA sec. 155a.[5]

La ley precitada responsabiliza a los patronos no solo por los actos de hostigamiento sexual en los que estos o sus supervisores incurran, sino también por el hostigamiento sexual entre sus empleados si sabían o debían estar enterados de tal conducta. 29 LPRA secs. 155d-e. Esto último, a menos que el patrono pruebe que tomó una acción inmediata y apropiada para corregir la situación. 29 LPRA secs. 155e. En ese sentido, "[u]na acción inmediata y apropiada es aquella que razonablemente terminará sin demora los actos de hostigamiento sexual y evitará su repetición de manera efectiva". Albino v. Angel Martínez, Inc., supra, pág. 475. Para determinar esto, es necesario examinar las circunstancias particulares de cada caso, entre estas, la existencia de un reglamento aplicable a la situación y su cumplimiento. Íd.

Un elemento fundamental de esta ley es que le impone al patrono la responsabilidad afirmativa en la prevención, prohibición y erradicación del hostigamiento sexual en el empleo. Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 DPR

---

[5]Además, abarca las organizaciones obreras y otras organizaciones, grupos o asociaciones en las cuales participan empleados con el propósito de gestionar con los patronos sobre los términos y condiciones de empleo, así como las agencias de empleo. 29 LPRA sec. 155a.

643, 652 (1994). Así, en su Artículo 10, dispone lo siguiente:

> Todo patrono tiene el deber de mantener el centro de trabajo libre de hostigamiento sexual e intimidación y deberá exponer claramente su política contra el hostigamiento sexual ante sus supervisores y empleados y garantizará que puedan trabajar con seguridad y dignidad. Cumpliendo con la obligación que se le impone al patrono de prevenir, desalentar y evitar el hostigamiento sexual en el empleo, éste deberá tomar las medidas que sean necesarias o convenientes con ese propósito incluyendo, pero sin limitarse a las siguientes:
> (a) Expresar claramente a sus supervisores y empleados que el patrono tiene una política enérgica contra el hostigamiento sexual en el empleo.
> (b) Poner en práctica los métodos necesarios para crear conciencia y dar a conocer la prohibición del hostigamiento sexual en el empleo.
> (c) Dar suficiente publicidad en el lugar de trabajo, para los aspirantes a empleo, de los derechos y protección que se les confieren y otorgan bajo las secs. 155 a 155m de este título, al amparo de las secs. 1321 a 1341 de este título, las secs. 146 a 151 de este título y de la Constitución del Estado Libre Asociado de Puerto Rico.
> (d) Establecer un procedimiento interno adecuado y efectivo para atender querellas de hostigamiento sexual. 29 LPRA sec. 155i.

Lo anterior no implica que los patronos deben adoptar un reglamento en particular, sino que les brinda unas guías mínimas para que, a su discreción, implante una política efectiva en contra del hostigamiento. Delgado Zayas v. Hosp. Int. Med. Avanzada, supra, pág. 658. A su vez, corresponde a cada patrono tomar las medidas cautelares que sean necesarias para evitar con efectividad el hostigamiento sexual en sus lugares de trabajo. Íd.

En fin, la política pública del Gobierno de Puerto Rico contra el hostigamiento sexual en el ámbito obrero-patronal

es clara y le corresponde a cada patrono tomar las medidas necesarias para cumplir cabalmente con el mandato de realizar actos afirmativos para desalentar este tipo de prácticas indeseables y promover activamente una política de prevención. Rosa Maisonet v. ASEM, supra, pág. 390.

Acorde con lo anterior, la Policía de Puerto Rico adoptó el Reglamento para Establecer la Política Pública y Procedimiento para Radicar Querellas de Hostigamiento Sexual de la Policía de Puerto Rico, Núm. 6508 de 16 de agosto de 2002. En este enfatizó su política de cero tolerancia al hostigamiento sexual y su compromiso con proveer un ambiente de trabajo libre de todo tipo de hostigamiento.

Posteriormente, este fue derogado por el Reglamento para el establecimiento de prácticas policiacas libres de discrimen, conducta sexual impropia y represalias de la Policia de Puerto Rico, Núm. 8728 de 13 de abril de 2016.[6] Este último no alteró la política en contra del hostigamiento. Por el contrario, reafirmó el compromiso de prevenir, atender y erradicar este tipo de actos en el ámbito laboral. En ese mismo tono, dispuso que los supervisores tienen la responsabilidad de tomar las medidas provisionales inmediatas para evitar el contacto entre la parte querellante y la querellada. Art. VII, supra. Asimismo, le impone a los supervisores la obligación de referir a la

---

[6]El Reglamento Núm. 9089 de 31 de mayo de 2019 anuló el Reglamento Núm. 8728, por lo que, al momento de presentarse la querella de hostigamiento sexual de autos, el Reglamento Núm. 8728 era el vigente.

Superintendencia Auxiliar en Responsabilidad Profesional todas las violaciones al reglamento precitado con el propósito de que esta última, junto con el Comandante de Área, Director de la División o Comisionado Auxiliar, considere como medidas cautelares la reubicación o traslado del empleado, incluso hasta la suspensión de empleo y/o sueldo. Íd.; Art. X, supra. A su vez, indica que toda querella sería de carácter confidencial. Art. IX(9), supra.

**III**

En el ejercicio de nuestra función revisora, debemos evaluar si los foros recurridos erraron al no desestimar la acción en contra del Gobierno de Puerto Rico cuando la reclamación está basada en la presentación de una querella de hostigamiento sexual y en las medidas cautelares adoptadas como consecuencia de tal presentación.

En Puerto Rico existe una fuerte política pública en contra del hostigamiento sexual en el ámbito laboral, a la cual nos hacemos eco. Tal política, aplicable al Gobierno de Puerto Rico en su faceta como patrono,[7] exige prevención y acción inmediata ante un reclamo de hostigamiento sexual. En este campo, el Estado tiene que ser proactivo en investigar, evitar y proteger la seguridad de su empleomanía. No puede ser de otro modo si queremos erradicar este mal social de nuestros ambientes de trabajo y no perpetuar sus nefastas consecuencias. No obstante, el Estado no puede responder en

---

[7]Guardiola Álvarez v. Depto. de la Familia, supra, pág. 682.

daños ante un querellado de hostigamiento sexual si actúa según los parámetros que le exige nuestro ordenamiento.

Según mencionado, en la demanda ante nuestra consideración, el demandante pretende responsabilizar al Estado por la actuación de una empleada que presentó una querella de hostigamiento sexual en su contra y por la reacción de los supervisores a tal acto. Ante ello, el Estado solicitó la desestimación de las reclamaciones en su contra al amparo de la Regla 10.2 de Procedimiento Civil de 2009, supra, por no proceder un remedio en ley.

Tras estudiar detenidamente tales alegaciones, constatamos que, en efecto, la demanda no expone una reclamación que justifique la concesión de un remedio por parte del Gobierno de Puerto Rico.

Primero, ante las circunstancias particulares que generaron esta controversia, el Estado no responderá por la actuación de su empleada en presentar la querella de hostigamiento sexual. El demandante basa su reclamación en que tal acto tuvo la intención de perjudicar y mancillar su buen nombre y que las imputaciones fueron "maliciosas, infundadas, libelosas y difamatorias".[8]

Como se puede apreciar, las alegaciones de la demanda describen la actuación de la empleada como actos intencionales y maliciosos. Aun si el demandante prueba tales alegaciones, como cuestión de Derecho, la Ley Núm. 4,

---

[8]Demanda, pág. 3.

<u>supra</u>, expresamente prohíbe las reclamaciones en contra del Estado bajo estas circunstancias. Es decir, el Estado no responde por las actuaciones de sus empleados constitutivas de difamación, calumnia o libelo. 32 LPRA sec. 3081.

Segundo, el Gobierno de Puerto Rico no responderá ante las medidas cautelares tomadas como respuesta a la presentación de una querella de hostigamiento sexual entre sus empleados. Ello, cuando actúa dentro de los parámetros y obligaciones de las leyes o reglamentos aplicables. Precisamente, el Gobierno de Puerto Rico, al amparo de tales exigencias y obligaciones, actuó ante la querella de hostigamiento sexual incoada en contra del agente Casillas Carrasquillo. Basado en ello, implantó medidas cautelares para brindar las protecciones adecuadas. No se le puede imputar negligencia a quien actúa acorde con los reglamentos que rigen sus funciones.

El demandante reclama como daños en su demanda el inicio de una investigación en su contra y el traslado hacia otra comandancia. Todo ello como consecuencia de la presentación de la querella de hostigamiento sexual. Sin embargo, ante la presentación de una querella de esta índole, el Estado tenía que iniciar tal investigación. Así se lo exige el Derecho aplicable. En cuanto al traslado, este se realizó como medida protectora, tal cual lo contemplan los reglamentos aplicables. Tan es así que el traslado se llevó a cabo el mismo día en que se presentó la querella de hostigamiento sexual. Además, la querella no solo contó con el testimonio

de la agente querellante, sino que estuvo respaldada por un segundo testimonio de otra de las agentes.[9] Es por ello, que, a base de las propias alegaciones de la demanda, el Gobierno de Puerto Rico, como patrono de la querellante y del querellado, tenía justa causa para tomar tal medida protectora.

Ante el cuadro descrito, existe certeza de que las alegaciones de la demanda del agente Casillas Carrasquillo no conllevan la concesión de remedio alguno por parte del Estado, por lo que procede la desestimación de las reclamaciones en contra del Gobierno de Puerto Rico.

## IV

Por las razones expuestas, se revoca el dictamen recurrido y se desestima, al amparo de la Regla 10.2 de Procedimiento Civil de 2009, 32 LPRA Ap. V, la acción en contra del Gobierno de Puerto Rico.

Se dictará Sentencia de conformidad.

Luis F. Estrella Martínez
Juez Asociado

---

[9]La alegación 6 de la demanda lee como sigue:

Que la co-demandada, Katherine Morales Lugo, placa #35580, funge y fungía como Agente del Negociado de la Policía de Puerto Rico, en el Distrito de Caguas, al momento de los hechos y fue alegada testigo de la querellante en contra del Demandante, por lo cual está siendo demandada en su carácter personal y oficial.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Edward Casillas Carrasquillo<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado de<br>Puerto Rico<br><br>Peticionario | CC-2020-0465 |

Sentencia

En San Juan, Puerto Rico, a 19 de abril de 2022.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca el dictamen recurrido y se desestima, al amparo de la Regla 10.2 de Procedimiento Civil de 2009, 32 LPRA Ap. V, la acción en contra del Gobierno de Puerto Rico.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz emitió una Opinión de Conformidad.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Edward Casillas Carrasquillo<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Peticionario | CC-2020-0465 | *Certiorari* |

La Jueza Presidenta Oronoz Rodríguez emitió una Opinión de Conformidad

En San Juan, Puerto Rico, a 19 de abril de 2022.

Estoy conforme con el proceder mayoritario. Suscribo esta Opinión para enfatizar ciertos aspectos que considero medulares. Particularmente, debo recalcar que el hostigamiento sexual en el ámbito laboral —como una manifestación terrible del discrimen por razón de género— se debe combatir desde todos los frentes, por el efecto nocivo que tiene en la dignidad de cada ser humano que lo sufre. Por ello, en esta ocasión pautamos acertadamente que el Estado —como patrono— no debe ser penalizado por hacer valer la política pública trascendental en contra de esta conducta tan deleznable.[1]

---

[1] De entrada, aclaro que, en modo alguno, paso juicio sobre las imputaciones de hostigamiento sexual en contra del peticionario. El propósito de esta ponencia es esbozar la seriedad, envergadura y trascendencia de las situaciones de hostigamiento sexual, particularmente en el contexto laboral.

**I**

**A. Política pública contra el Hostigamiento Sexual**

Con la aprobación de la Ley Núm. 17 de 22 de abril de 1988 (Ley Núm. 17), mejor conocida como *Ley para prohibir el hostigamiento sexual en el empleo*, 29 LPRA sec. 155 et seq., se estableció como política pública en Puerto Rico que el hostigamiento sexual es "una forma de discrimen por razón de sexo y como tal constituye una práctica ilegal e indeseable que atenta contra el principio constitucional establecido de que la dignidad del ser humano es inviolable". 29 LPRA sec. 155. Debido a que el hostigamiento sexual constituye una práctica disruptiva para los entornos laborales, y dado a que priva del goce y disfrute de una vida plena a la cual tiene derecho todo ser humano, era imprescindible tomar acción. Exposición de Motivos, Ley Núm. 17. **Así, mediante este estatuto se instauró la política pública del Estado Libre Asociado de Puerto Rico en contra del hostigamiento sexual, de modo que se prohíbe, se imponen responsabilidades y se fijan penalidades para hacer frente a este mal social.** 29 LPRA sec. 155.

**B. Efectos adversos del Hostigamiento Sexual**

La Ley Núm. 17 define el hostigamiento sexual en el empleo como:

> [C]ualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual o que sea reproducida utilizando cualquier medio de comunicación incluyendo, pero sin limitarse, al uso de herramientas de multimedios a través de la red cibernética o por

cualquier medio electrónico, cuando se da una o más de las siguientes circunstancias:

> (a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.

> (b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.

> (c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo. 29 LPRA sec. 155b.

El hostigamiento sexual puede expresarse de formas diversas: (1) manifestaciones simuladas como piropos, guiñadas e insinuaciones sexuales indeseadas; (2) expresiones de agresión sexual más directas y más violentas como frases de cariño no invitadas, pellizcos, roces corporales no solicitados, invitaciones insistentes a salidas que no se desean, besos, abrazos y apretones forzados, y (3) casos extremos de violencia física y psíquica, que incluye la violación sexual. Sánchez et al. v. A.E.E., 142 DPR 880 (1997)(Opinión Concurrente del Juez Asociado señor Negrón García) (citando a Mayra Muñoz Vázquez & Ruth Silva Bonilla, El Hostigamiento Sexual: Sus Manifestaciones y Características en la Sociedad, en los Centros de Empleo y los Centros de Estudio, Centro de Investigaciones Sociales, Facultad de Ciencias Sociales, Universidad de Puerto Rico, 1985, pág.3).

Estas, entre muchas otras maneras, son acciones motivadas por el sexo, género u orientación sexual de una persona.[2]

Desde la perspectiva de las ciencias de la conducta, el hostigamiento sexual es aquel comportamiento que menosprecia, degrada o humilla a una persona sobre la base de su género real o percibido, expresión de género u orientación sexual.[3] Es decir, **el hostigamiento sexual frecuentemente causa dolor y sufrimiento.** Sus víctimas lo perciben como "ofensivo, molesto, humillante, intimidante, vergonzoso, estresante y aterrador".[4] Incluso, estudios demuestran que cuando el hostigamiento sexual deshumaniza y debilita a sus víctimas, provoca estragos tales como enfermedades mentales y físicas relacionadas con el estrés, como también el trastorno de estrés postraumático.[5]

Cabe mencionar que esta conducta también desestabiliza los centros de trabajo. En ese sentido, el hostigamiento sexual "interf[iere] de forma deliberada o involuntaria con el desempeño y las aspiraciones profesionales al crear un entorno intimidante, hostil, abusivo u ofensivo que erosiona la confianza de las víctimas y hace que sea más difícil

---

[2] Shawn Meghan Burn, The Psychology of Sexual Harassment, *Teaching of Psychology*, 1 (2019) (Vol. 46 (1)).
[3] Íd. Véase también: Jennifer L. Berdahl & Jana L. Raver, Sexual Harrasment, *APA Handbook of Industrial and Organizational Psychology*, 641 (2011) (Vol. 3).
[4] Meghan Burn, supra, pág. 1 (Traducción suplida).
[5] Nicole T. Buchanan, Isis H. Settles, Ivan H. C. Wu & Diane S. Hayashino, Sexual Harassment, Racial Harassment, and Well-Being among Asian American Women: An Intersectional Approach, *Women & Therapy*, (2018) (Vol. 41); Sadie E. Larsen & Louise F. Fitzgerald, PTSD symptoms and sexual harassment: the role of attributions and perceived control, *Journal of Interpersonal Violence*, (2011) (Vol. 26 (13)).

lograrlo".[6] De igual forma, se configuran una serie de dinámicas nocivas que inciden indudablemente en las operaciones de la empresa, negocio o industria.

Cuando el hostigamiento sexual lleva a sus víctimas a abandonar sus empleos, ello afecta negativamente la progresión de la carrera profesional de esa persona debido a la pérdida de antigüedad y habilidades laborales específicas de la organización. Asimismo, se generan brechas en el empleo y a las víctimas se les dificulta obtener referencias de supervisores y compañeros o compañeras de trabajo.[7] El hostigamiento sexual es una **conducta laboral contraproducente** que tiene costos organizacionales financieros. Además, a nivel empresarial impacta adversamente la reputación de la empresa y la industria, produce insatisfacción laboral y profesional, se reduce el compromiso organizacional, aumenta el ausentismo, se crea el agotamiento laboral, y disminuye la motivación y la productividad.[8]

Como se puede apreciar, el hostigamiento sexual trastoca —aunque de manera diferenciada— diferentes aspectos de nuestra sociedad. Tiene efectos devastadores tanto para la persona que lo sufre como para los entornos sociales en donde esta se inserta; por ejemplo, su centro de trabajo.

---

[6] Ryan Jacobson & Asia A. Eaton, How Organizational Policies Influence Bystander Likelihood of Reporting Moderate and Severe Sexual Harassment at Work, *Employee Responsibilities and Rights Journal*, pág. 4 (2018) (Vol. 30 (4)). Véase también: Heather McLaughlin, Christopher Uggen & Amy Blackstone, The Economic and Career Effects of Sexual Harassment on Working Women, *Gender & Society*, (2017) (Vol. 31 (3)).
[7] McLaughlin, Uggen & Blackstone, supra.
[8] Kathryn Holland & Lilia M. Cortina, Sexual harassment: Undermining the wellbeing of working women, *Handbook on Well-Being of Working Women*, (2016).

## C. Hostigamiento sexual hacia la mujer

Es menester aprovechar esta tesitura para resaltar —una vez más— cómo el hostigamiento sexual perjudica **principalmente** a las mujeres, como ocurre en el caso de epígrafe.[9] Son mayormente las mujeres, jóvenes y niñas quienes se ven acorraladas en este tipo de situaciones.[10] Cuando una mujer es hostigada sexualmente, ello ocurre, precisamente, porque es *mujer*.[11] He aquí el fundamento para denominar al hostigamiento sexual como una forma de discrimen por razón de género, pues se configura un **trato dispar** al tomar como base ese elemento. Esta conducta es una manifestación adicional del sistema patriarcal imperante en el que, todavía, se percibe a la mujer como débil, frágil e inferior al hombre.

Ahora bien, este mal social no solo perjudica a la mujer, sino también a las personas que pertenecen a otras comunidades vulnerables, como la comunidad LGBTTQIA+, entre otras. Valga señalar que ello no solamente ocurre en los centros de trabajo, sino en muchos otros contextos.[12] Lamentablemente,

---

[9] Véase: Louise F. Fitzgerald & Lilia M. Cortina, <u>Sexual harassment in work organizations: A view from the 21st century</u>, *APA handbook of the psychology of women: Perspectives on women's private and public lives*, 1 (2018).

Por otro lado, en la propia Ley Núm.17 la Asamblea Legislativa consideró que, si bien el hostigamiento sexual laboral afecta tanto al hombre como a la mujer, **"la víctima típica tiende a ser la mujer. Esto es así mayormente debido a los patrones culturales existentes donde se sit[úa] al hombre como figura predominante sobre la mujer"**. Exposición de Motivos, Ley Núm. 17.

[10] <u>Íd.</u>

[11] <u>Íd.</u>

[12] Por ejemplo, académicos y académicas que han investigado este tema han puntualizado que:

Women and girls are harassed not only in their workplaces and universities, but also by strangers in public, by landlords in their homes and apartments, by teachers and peers in high schools, and even in middle schools. Nurses are harassed by physicians and female physicians by patients, service workers

esta conducta, resultado de perspectivas patriarcales, donde se desvaloriza a la mujer y sus aportaciones, permea muchos de los espacios donde nos desenvolvemos.

Precisamente, esta situación tétrica y el impacto social dañino que supone el hostigamiento sexual provocó la acción legislativa que se recogió en la Ley Núm. 17. Ello, a fin de condenar de manera contundente esta práctica ilegal e indeseable y establecer los mecanismos legales para contrarrestarla, particularmente en el contexto laboral.

## II

Es meritorio aclarar los mecanismos específicos que la Ley Núm. 17 provee para combatir el hostigamiento sexual. Velázquez Ortiz v. Mun. de Humacao, 197 DPR 656, 663-664 (2017). En primer lugar, le impone al patrono —público y privado— "el deber de mantener el centro de trabajo libre de hostigamiento sexual e intimidación y deberá exponer claramente su política contra el hostigamiento sexual ante sus supervisores y empleados y garantizará que puedan trabajar con seguridad y dignidad". 29 LPRA sec. 155i. Para cumplir con lo anterior, el patrono deberá implementar, al menos, las siguientes medidas: (a) expresar claramente a sus supervisores y empleados que el patrono tiene una política enérgica contra el hostigamiento sexual en el empleo; (b) poner en práctica los métodos necesarios para crear conciencia y dar conocer la prohibición del hostigamiento

---

by customers, hotel maids by guests, and female inmates by correctional officers. Íd. (Cita depurada).

sexual en el empleo; (c) dar suficiente publicidad en el lugar de trabajo, para los aspirantes a empleo, de los derechos y protección que se les confiere y otorga bajo la Ley Núm. 17 y otras leyes laborales —especificadas en la Ley Núm. 17— y, (d) **establecer un procedimiento interno adecuado y efectivo para atender querellas de hostigamiento sexual**. Íd.

En consecuencia, "[se] requiere que el patrono tome acciones afirmativas para mantener el área de trabajo libre de intimidaciones y hostigamiento sexual". Departamento del Trabajo y Recursos Humanos, Guías para la Interpretación de la Legislación de Puerto Rico 163 (1era ed. 2019). Al respecto, este Tribunal ha enunciado que le "[c]orresponde a cada patrono, a la luz de sus circunstancias particulares, **tomar las medidas cautelares que sean necesarias para efectivamente evitar el hostigamiento sexual en sus talleres de trabajo**". Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 DPR 643, 658 (1994) (Énfasis suplido).

En segundo lugar, la Ley Núm. 17 contempla una causa de acción de daños y perjuicios contra las personas responsables de causar, promover que se cause o permitir el hostigamiento sexual. 29 LPRA sec. 155j. Sépase que tanto el patrono como el autor de la conducta pueden ser encontrados incursos en responsabilidad civil. El estatuto preceptúa los supuestos en que el patrono —el que, como se mencionó, tiene una eminente labor de prevención— puede ser demandado.

En fin, la referida legislación, en aras de afianzar la política pública contra el hostigamiento sexual, por un lado,

les exige a los patronos diligencia y actuación oportuna para su prevención y, por el otro, de configurarse esta conducta, les provee un remedio a las víctimas.[13]

**III**

En la controversia ante nuestra consideración, la pretensión del recurrido —a quien se le presentó una querella por actos de hostigamiento sexual— es que se le impute al Estado la comisión de conducta negligente por hacer valer la reglamentación para prevenir el hostigamiento sexual. Es una pretensión insostenible que atenta contra la política pública del Estado al enfrentar esta conducta perturbadora. Adviértase que aquí una compañera de trabajo del recurrido le presentó la referida querella y, a base de esta, se activaron las **medidas cautelares** para manejar la situación, las cuales incluyeron el traslado del recurrido a otro lugar de trabajo.

---

[13] Adicional a las protecciones de este estatuto, a nivel federal, el Título VII de la Ley de Derechos Civiles de 1964 considera el hostigamiento sexual como una forma de discrimen por razón de sexo en el ámbito laboral y, por consiguiente, lo proscribe. Véase: U.S. Equal Employment Opportunity Commission, Facts About Sexual Harassment, https://www.eeoc.gov/fact-sheet/facts-about-sexual-harassment#:~:text=Sexual%20harassme                nt%20is%20a%20form,Civil%20Rights%20Act%20of%201964.&text=The%20victim%20does%20not%20have,%2C%20or%20a%20non%2Demployee.

La Comision de Igualdad de Oportunidades en el Empleo de los Estados Unidos (EEOC, por sus siglas en inglés) en la agencia gubernamental encargada de administrar la legislación federal antidiscrimen en los centros de trabajo.

Por otro lado, el Código Penal de Puerto Rico de 2012 tipifica en su Artículo 135 el delito de acoso sexual, particularmente penalizando al perpetrador de esta conducta en el ámbito de una relación laboral. Véase: 33 LPRA sec. 5196. El texto del delito reza de la forma siguiente:

> Toda persona que, en el ámbito de una relación laboral, docente o de prestación de servicios, solicite favores de naturaleza sexual para sí o para un tercero, y sujete las condiciones de trabajo, docencia o servicios a su cumplimiento, o mediante comportamiento sexual provoque una situación con conocimiento de que resultará intimidatoria, hostil o humillante para la víctima, será sancionada con una pena de reclusión por un término fijo de tres (3) años. Íd.

Por ese proceder, según el criterio del recurrido, el Estado debe hallarse incurso en responsabilidad civil extracontractual. Su contención, además de ser de inmeritoria, es absolutamente frívola.

Como ha quedado meridianamente claro, el hostigamiento sexual es una conducta reprensible, y las situaciones que surgen a raíz de esta deben tratarse con seriedad, sensibilidad y prontitud. Aquí, el Estado intervino de manera oportuna, responsable y diligentemente, al amparo de los procesos establecidos para manejar querellas con alegaciones de hostigamiento sexual. Responsabilizar al Estado por actuar de conformidad con la ley y los reglamentos promulgados a estos fines, **sería dar al traste con la política pública categórica en contra del hostigamiento sexual. Ello no puede ser.**

Por eso hoy es necesario reiterar las consecuencias tan devastadoras que tiene el hostigamiento sexual, tanto en sus víctimas como —en lo relacionado con este caso— en los centros de trabajo. Más aún, es imperativo recordar que la desigualdad y la violencia de género se manifiesta también en el ambiente laboral, siendo el hostigamiento sexual, una de las modalidades más visibles y un refejo vivo de las relaciones de poder asimétricas que existen entre hombres y mujeres.[14]

---

[14] "La violencia de género en el trabajo es un hecho cotidiano que se expresa en las relaciones laborales y en las relaciones entre los sexos en el ambiente laboral, pero que no es suficientemente reconocido como transgresión, con fuerte tendencia a la banalización o normalización de los hechos; y, sus consecuencias en la integridad física y psicológica de la víctima, no son atribuidos a la causa generadora". Doris Acevedo, Violencia de género en el trabajo: acoso sexual y hostigamiento laboral, Revista Venezolana de Estudios de la Mujer, Vol. 14, Núm. 32, pág. 165.

Por esa razón, desde este espacio, los tribunales debemos condenar el hostigamiento sexual y el discrimen por razón de género, y en ese sentido, combatirlo para lograr su erradicación. La inviolabilidad de la dignidad humana así lo exige.

**IV**

Por los fundamentos expuestos, estoy conforme con la Opinión que emitió una Mayoría de este Tribunal.


                                    Maite D. Oronoz Rodríguez
                                         Jueza Presidenta